**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**SCOTT M. JOHNSON**                                                                                          **PLAINTIFF**

**v.**                                                    **Case No. 4:19-cv-616-LPR**

**SHEFFIELD FINANCIAL,**
**A Division of Branch Banking**
**and Trust Company**                                                                                       **DEFENDANT**

**ORDER**

Before the Court is Defendant Sheffield Financial's Motion for Judgment on the Pleadings[1] and Plaintiff Scott Johnson's Motion and Supplemental Motion for Leave to File Amended Complaint.[2] This case has a somewhat convoluted procedural history. But it is clear what the Court needs to do now. The Court needs to determine if Mr. Johnson's most recent proposed amendment to his Complaint ("Supplemented Amended Complaint") survives the arguments made by Sheffield in its Motion for Judgment on the Pleadings as recently supplemented.[3] If one or more of the claims in the Supplemented Amended Complaint fails, the Court then needs to determine whether that claim should be dismissed with prejudice or without prejudice.

---

[1] Def.'s Mot. for J. on the Pleadings (Doc. 12).

[2] Pl.'s Mot. for Leave to Amend Compl. (Doc. 25); Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44).

[3] Def.'s Mot. for Leave to Suppl. its Mot. for J. on the Pleadings (Doc. 37).

I. STATE COMMON LAW CLAIMS

The state common law claims (invasion of privacy and defamation) are out.[4] They are preempted for at least two reasons. First, they are preempted by 15 U.S.C. § 1681t(b)(1)(F). That provision provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."[5] It is clear that Sheffield is a furnisher of information to credit reporting agencies, and that the common law claims at issue here relate to Sheffield's responsibilities under § 1681s–2 of this title. Mr. Johnson does not really argue against this point head-on. Rather, he argues that a different preemption provision (15 U.S.C. § 1681h(e)) is the more appropriate preemption provision to apply in these circumstances.[6] The Court disagrees. Although my emphasis and legal analysis of this provision would have been slightly different, I agree with Chief Judge Marshall's bottom line in *Ilodianya v. Capital One Bank USA NA*.[7] *Ilodianya* addressed this very issue, and Chief Judge Marshall correctly determined that § 1681t(b)(1)(F) preemption applies irrespective of whether § 1681h(e) preemption might apply as well.

---

[4] Although a state common law claim for negligence was included in Mr. Johnson's Original Complaint, that claim was removed in his Supplemented Amended Complaint. Mr. Johnson acknowledges that the removal of that claim was intentional. Pl.'s Br. in Supp. of Mot. for Leave to Amend Compl. (Doc. 26) at 2.

[5] 15 U.S.C. § 1681t(b)(1)(F).

[6] *See* Pl.'s Br. in Supp. of Mot. for Leave to Amend Compl. (Doc. 26) at 3, quoting *Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1116–17 (D. Minn. 2004). In his Reply brief, Plaintiff (for the first time) also pointed to 15 U.S.C. § 1681n in arguing that state law claims based on willful non-compliance with FCRA requirements are not preempted. Pl.'s Reply to Resp. to Mot. for Leave to Amend Compl. (Doc. 30) at 5-6. A claim based on § 1681n, however, would be a *federal* claim, not a state claim. Furthermore, 15 U.S.C. § 1681s–2(c) specifically exempts furnishers of information from liability under § 1681n for reporting inaccurate information. In short, this argument is simply not persuasive enough to carry the day, especially when weighed against the plain language of § 1681t(b)(1)(F). In any event, as the Court notes later in this opinion, the Supplemented Amended Complaint fails to properly allege malice or willful intent to injure.

[7] 853 F. Supp. 2d 772 (E.D. Ark. 2012).

Second, even if Mr. Johnson is correct that § 1681h(e) preemption applies *instead of* § 1681t(b)(1)(F) preemption, the state common law claims still fail. Section 1681h(e) provides as follows:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.[8]

While Mr. Johnson's Supplemented Amended Complaint includes the words "malicious," "malice," and "willful,"[9] those allegations fall clearly into the category of conclusory, speculative, and bare assertions. There is nothing—in terms of factual allegations—in the Supplemented Amended Complaint to suggest that Sheffield reported this account as delinquent for any reason other than a good faith belief that the account was in fact delinquent.

According to the Supplemented Amended Complaint, on or about July 3, 2015, Mr. Johnson's son, Joshua Johnson, purchased a 2015 Polaris Ranger 570 utility terrain vehicle (the "Ranger").[10] Sheffield financed the purchase of the Ranger. Mr. Johnson cosigned the Note. In March or April of 2016, Joshua decided that he no longer wanted the Ranger and contacted Sheffield to so advise. The Supplemented Amended Complaint alleges that "[i]n early April 2016, Joshua located a third-party purchaser for the Ranger. [Sheffield] accepted payment from the third-party and instructed Joshua over the phone on multiple occasions to 'give him [the third-party] the keys.' This third-party was thereafter placed in possession of the Ranger."[11]

---

[8] 15 U.S.C. § 1681h(e).

[9] Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 7.

[10] *Id.* at 1.

[11] *Id.* at 2.

Mr. Johnson attached to his Original Complaint a "monthly statement summary" from Sheffield dated April 19, 2016.[12] The statement was incorporated by reference in Mr. Johnson's Supplemented Amended Complaint.[13] The statement shows that a "payoff" amount was credited to the account on March 31 but removed on April 6, then another "payoff" amount was credited on April 7 and removed on April 13, then finally a third "payoff" amount was credited on April 16, three days before the date on the statement.[14] The statement says that the "ACCOUNT IS PAID IN FULL."[15] In late April or early May 2016, Sheffield told Mr. Johnson over the phone that "the third-party's payment was returned for insufficient funds and that [Mr. Johnson] still had outstanding debt."[16] Mr. Johnson "denied that he owed anything to [Sheffield]."[17] Soon thereafter, Sheffield reported Mr. Johnson's loan as delinquent to credit reporting agencies. Mr. Johnson did not become aware that the loan was reported as delinquent until late 2018 or early 2019, when he applied for credit and a lender brought the matter to his attention.[18]

After learning of the credit reporting, Mr. Johnson filed a complaint with the Consumer Financial Protection Bureau ("CFPB"). On February 27, 2019, Sheffield sent a letter in response to the CFPB complaint. A copy of that letter was attached to the Original Complaint and incorporated by reference in the Supplemented Amended Complaint.[19] The letter stated, in relevant part:

> Our records indicate you attempted an Automated Clearinghouse (ACH) transfer of funds with a third party. The ACH transfer was attempted three (3) times (March

---

[12] Pl.'s Compl. (Doc. 2) at 10.

[13] Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 2.

[14] Pl.'s Compl. (Doc. 2) at 10.

[15] *Id.*

[16] Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 2.

[17] *Id.*

[18] *Id.*

[19] *Id.* at 3.

4

> 31, 2016, April 7, 2016, and April 26, 2016) and each time dishonored by the depository institution used with their reason being no account found. We would take these attempts to be related to the sale of the property collateral (the collateral) referenced in your complaint. Sheffield mailed letters to your address on file regarding these returned items and in a conversation with one of our associates on April 29, 2016 and again on May 9, 2016 you were advised of the returned items. On June 13, 2016 you called our office then declaring the collateral to have been stolen.
>
> If you sold or transferred possession of the collateral without assuring the loan was paid in full and our lien satisfied, this is in violation of the terms of your loan contract (paragraphs 7 and 8). If stolen, then insurance should have been in place as outlined in paragraph 6. Payments have not been made timely therefore the loan is in default. . . .
>
> These actions were yours and not condoned by or encouraged by Sheffield. We are under no obligation to pay any fees or damages demanded in your complaint. We regret the circumstances but find no wrongdoing or error in handling by Sheffield. Sheffield continues to hold a valid debt.[20]

After receiving the letter, Mr. Johnson hired counsel.[21] Again, there is no allegation that Sheffield reported the account in a way that it thought was false or that Sheffield did so with malice or willful intent to harm Mr. Johnson.

I am going to dismiss with prejudice for two reasons. First, given my agreement with Chief Judge Marshall in *Ilodianya*, the state common law claims pled in the Supplemented Amended Complaint could never be viable. But even if Chief Judge Marshall and I are incorrect and § 1681h(e) preemption applies *instead of* § 1681t(b)(1)(F) preemption, Mr. Johnson has had over six months and numerous opportunities to amend his Complaint in such a way that would properly state a non-preempted state common law action. The Court's December 30, 2020 Order put Mr. Johnson on notice (or would have put a reasonable litigant on notice) that his Original Complaint

---

[20] Pl.'s Compl. (Doc. 2) at 11.

[21] Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 3.

had deficiencies in terms of pleading malice or willful intent to injure.[22] In such circumstances, after numerous months and numerous opportunities to amend, the Court believes dismissal with prejudice is appropriate at this juncture. If Mr. Johnson could have pled more regarding malice or willful intent, he would have done so by now.

## II. FAIR CREDIT REPORTING ACT CLAIM

Mr. Johnson's FCRA claim is also out. Mr. Johnson bases his FCRA claim on 15 U.S.C. § 1681s-2(b), which requires "furnishers of information" (meaning those, such as Sheffield, who provide information about a consumer's debt to a credit reporting agency for inclusion on the consumer's credit report) to conduct an investigation if a consumer disputes information that the furnisher provided. The statute places a duty on furnishers to take corrective action "if the investigation finds that the information is incomplete or inaccurate."[23] Mr. Johnson states that he requested an investigation because "his account is being reported inaccurately."[24] Mr. Johnson argues that Sheffield is in violation of § 1681s-2(b) because Sheffield "continues to report the account as delinquent" after the investigation was completed.[25]

But what "inaccurate" information does Mr. Johnson allege that Sheffield found (or should have found) during the investigation that would require it to stop reporting the account as delinquent? His allegations in this regard do not make out a FCRA violation. The Eighth Circuit has held that "[b]ecause a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b) arises when it receives a notice of dispute from a [credit reporting agency], it need

---

[22] *See* Order Den. Pl.'s Counter-Mot. for Protective Order and To Stay Proceedings; and Taking Under Advisement Def.'s Mot. for J. on the Pleadings (Doc. 22) at 2-3.

[23] 15 U.S.C. § 1681s-2(b)(1)(D).

[24] Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 5.

[25] *Id.*

investigate only 'what it learned about the nature of the dispute from the description in the [credit reporting agency]'s notice of dispute.'"[26] Mr. Johnson provides a Dispute Results letter that he received from Experian, which states that Experian "contacted the company reporting the information you disputed, [and] supplied them all relevant information and any documents you gave us with your dispute . . . ."[27] Presumably, this means that Experian sent Sheffield the letter that Mr. Johnson's counsel sent to Experian.[28] That letter provided a brief overview of the alleged facts of the dispute, including the fact that Mr. Johnson's son turned possession of the Ranger over to a third party at the behest of Sheffield, that the "third party's payment was returned for insufficient funds," and that Sheffield contended that Mr. Johnson's "debt was still due and owing."[29] The letter concluded with the following: "Under Arkansas law, Sheffield's inability to enforce its security interest in the Ranger renders it unable to enforce or collect from the debt secured thereby. *See* ARK. CODE ANN. § 4-3-605 (2019). Please remove the Sheffield account from my client's credit reports."[30]

This strikes the Court as a legal dispute, not a factual dispute for which an investigation could or should change things. The Eighth Circuit has not ruled on whether furnishers have an obligation to resolve legal questions regarding a debt's validity during the investigation process.

---

[26] *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908 (8th Cir. 2011), quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009).

[27] Exhibit H ("Dispute Results" Letter from Experian) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-3) at 1.

[28] *See* Attach. (Letter from Stephen B. Niswanger to Equifax, TransUnion, and Experian) to Pl.'s Resp. to Mot. for J. on the Pleadings (Doc. 19-1). This letter was referenced in the "Facts" section of the proposed Supplemented Amended Complaint. Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 3.

[29] *See* Attach. (Letter from Stephen B. Niswanger to Equifax, TransUnion, and Experian) to Pl.'s Resp. to Mot. for J. on the Pleadings (Doc. 19-1) at 1.

[30] *Id.* at 2.

Sheffield argues that furnishers do not have such an obligation, citing a First Circuit case holding that

> a plaintiff's required showing [in § 1681s–2(b) cases] is factual inaccuracy, rather than the existence of disputed legal questions. . . . [F]urnishers are neither qualified nor obligated to resolve matters that turn[] on questions that can only be resolved by a court of law.[31]

The Court agrees with Sheffield and the First Circuit on this point.

Mr. Johnson does not argue that the First Circuit's holding is unsound. Rather, he argues that "there is a bona fide factual rather than legal dispute concerning the subject account."[32] Mr. Johnson asserts that "[t]he dispute here is that Defendant reported the account at one time as paid in full but then thereafter changed its mind. This is a factual dispute and should be resolved by a jury."[33] There is, however, no factual dispute that Sheffield reported that the account was "paid in full" on Mr. Johnson's monthly statement while the third attempt at the third-party payment was pending, then later told Mr. Johnson that the "payment was returned for insufficient funds and that the debt was still due and owing."[34] It is the legal significance of these facts, and not the facts themselves, that are in dispute. Put another way, this is not a situation of potential factual error on Sheffield's part, such as, for example, a case of identity theft, mistaken charges, or improper books or records. The Court concludes that Sheffield was not obligated to resolve the legal ramifications of the facts contained in Mr. Johnson's Experian letter during the investigation process.

---

[31] *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (quotations omitted); *see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (unpublished) ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).").

[32] Pl.'s Reply to Resp. to Mot. for Leave to Amend Compl. (Doc. 30) at 2.

[33] *Id.* at 2-3.

[34] Pl.'s Compl. (Doc. 2) at 2; Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1) at 2.

Sheffield's continued reporting of the debt as delinquent is not "inaccurate" for the purposes of § 1681s–2(b) because the contract dispute has not been resolved in Mr. Johnson's favor.[35]

The Court notes that Mr. Johnson's Supplemented Amended Complaint exclusively claims that it is the continued reporting of the debt as delinquent that constitutes the FCRA violation. Mr. Johnson's Supplemented Amended Complaint does not claim that Sheffield committed a FCRA violation by failing (after investigation) to report to the credit reporting agencies that the account delinquency is disputed.[36] Because this allegation is not made, the Court need not determine whether such an allegation would state a viable cause of action.

Sheffield asks the Court to dismiss Mr. Johnson's FCRA claim with prejudice. A sister district court has noted that "[w]hile the Eighth Circuit does not appear to have addressed the issue directly," decisions from the Eighth Circuit "generally favor" dismissals without prejudice for failures to state a claim, "at least where there is no evidence of persistent pleading failures."[37]

---

[35] Indeed, even if the Court were to later resolve the debt dispute in Mr. Johnson's favor, the fact that the reporting of the debt was not "found to be inaccurate" prior to such a ruling does not necessarily mean that Sheffield violated its investigation duties. As the Ninth Circuit has concluded, "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009).

[36] 15 U.S.C § 1681s–2(a)(3) places a duty on furnishers of information to provide notice of a dispute if their information is disputed by the consumer. Mr. Johnson asserted in his Reply to the Motion for Leave to Amend that Sheffield "does not now furnish to the credit bureaus information that the account is even disputed." Pl.'s Reply to Resp. to Mot. for Leave to Amend Compl. (Doc. 30) at 2. But at the time the Reply was filed, the investigation process had not yet been completed. *Id.* at 3-4. Sheffield's liability for failing to provide notice of a dispute would arise only *after* the investigation process was completed, as it would then constitute a failure to "modify" information that was "found to be . . . incomplete." 15 U.S.C. § 1681s–2(b)(1)(E)(i); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) ("[A] private cause of action arises under 15 U.S.C. § 1681s-2(b) when, having received notice [from a credit reporting agency] of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed."). The Supplemented Amended Complaint, which was filed after Experian's investigation process was completed, does not allege that Sheffield has violated its duty to provide notice of a dispute after the investigation concluded. Attach. (Am. Compl.) to Pl.'s Suppl. to Mot. for Leave to Amend Compl. (Doc. 44-1).

[37] *Holmseth v. City of E. Grand Forks*, No. CIV. 14-2970 DWF/LIB, 2015 WL 4488424 (D. Minn. July 23, 2015) (citing *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983) ("Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend. But if the plaintiff has persisted in violating Rule 8 the district court is justified in dismissing the complaint with prejudice." (internal citation omitted))).

The Court would be justified in concluding that there have been "persistent pleading failures" in this case. The Court has given Mr. Johnson ample opportunity to perfect his claims. The Court granted Mr. Johnson leave to amend his Complaint after Mr. Johnson conceded that he had failed to initiate the investigation process as required by the FCRA.[38] The Court granted an extension of time to file an amended Complaint in order to accommodate his tardiness in initiating the investigation.[39] The Court also granted leave to supplement the Amended Complaint after it was filed.[40]

Although the Court has given Mr. Johnson more than enough chances to cure the defects in his Complaint, the Court will dismiss the FCRA claim without prejudice. Mr. Johnson could, at least theoretically, try again with respect to the disputation issue identified by the Court above.[41]

### III. CONCLUSION

For the reasons stated above, Sheffield's Motion for Judgment on the Pleadings is GRANTED. Mr. Johnson's FCRA claim is DISMISSED without prejudice, and his state common law claims are DISMISSED with prejudice. Mr. Johnson's Motion and Supplemental Motion for Leave to File Amended Complaint are DENIED as futile.

IT IS SO ORDERED this 30th day of June 2020.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[38] Order Den. Pl.'s Counter-Mot. for Protective Order and To Stay Proceedings; and Taking Under Advisement Def.'s Mot. for J. on the Pleadings (Doc. 22).

[39] Order Granting Mot. for Extension of Time to File Mot. for Leave to Amend Compl. (Doc. 24).

[40] Order Granting in Part and Den. in Part Mot. for Leave to Suppl. Mot. for Leave to Amend Compl. and Reply (Doc. 41).

[41] *See supra* note 36.