IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SCOTT M. JOHNSON                                                    PLAINTIFF /
                                                        COUNTER DEFENDANT

v.                          Case No. 4:19-cv-00616-LPR

SHEFFIELD FINANCIAL, A DIVISION                        DEFENDANT /
OF BRANCH BANKING AND                          COUNTER CLAIMANT /
TRUST COMPANY                                 THIRD-PARTY PLAINTIFF

v.

JOSHUA JOHNSON                              THIRD-PARTY DEFENDANT


<u>ORDER</u>

        This case began when Scott Johnson filed several claims in state court against Sheffield

Financial.  Some of the claims were federal claims and some of the claims were state law claims.

Sheffield Financial removed the case from the Circuit Court of Lonoke County, Arkansas to this

Court.  Subsequently, Sheffield Financial brought a Counterclaim against Scott Johnson and a

Third-Party Complaint against his son, Joshua Johnson.  The Counterclaim and Third-Party

Complaint were both based on breach of contract under state law.[1]

        On November 4, 2019, Sheffield Financial filed a Motion for Judgment on the Pleadings

regarding Scott Johnson's claims.  The Court eventually granted that Motion and dismissed those

claims.  The sole remaining claim in this case is the state law breach of contract claim brought by

Sheffield Financial against Scott Johnson and Joshua Johnson.[2]  Before the Court is the Johnsons'

---

[1]     Answer & Countercl. (Doc. 10); Third-Party Compl. (Doc. 43).

[2]     Technically, there are two state law breach of contract claims remaining: one against Scott Johnson (the
Counterclaim) and one against Joshua Johnson (the Third-Party Complaint).  Answer and Countercl. (Doc. 10);
Third-Party Compl. (Doc. 43).  In substance, they are the same claim based on the same facts.  In any event,
whether the Court conceives of the remaining live issue as two claims or one, the Court's disposition of the
claim(s) would be the same.

Motion to Dismiss.[3]  The Johnsons argue that it would be inappropriate for the Court to exercise jurisdiction over the remaining state law breach of contract claim.

The Court grants the Motion to Dismiss in part.  The Court agrees with the Johnsons that it should not exercise supplemental jurisdiction over the remaining state law claim.  The Court also concludes—contrary to the position espoused by Sheffield Financial—that the Court lacks diversity jurisdiction over the breach of contract claim.  To a legal certainty, the amount in controversy is less than $75,000.  The Johnsons say that Sheffield Financial's breach of contract claim should thus be dismissed.  The Court concludes, however, that the more appropriate result is for the Court to remand the claim to the Circuit Court of Lonoke County, Arkansas.

## BACKGROUND

On August 2, 2019, Scott Johnson filed a Complaint in the Circuit Court of Lonoke County,[4] alleging violations of the federal Fair Credit Reporting Act ("FCRA") and Arkansas common law.[5]  The Arkansas common law claims were for negligence, invasion of privacy/false light, and defamation.[6]  On September 4, 2019, Sheffield Financial removed the case to this Court based both on federal question and diversity jurisdiction.[7]

### A.  Scott Johnson's Complaint

In his Complaint, Scott Johnson alleged the following.  On July 3, 2015, Joshua Johnson purchased a Polaris Ranger S70 utility terrain vehicle from a dealer in Pine Bluff, Arkansas.

---

[3]   Mot. to Dismiss (Doc. 49).

[4]   Compl. (Doc. 2) at 1.

[5]   *Id.* at 3-7.

[6]   *Id.* at 5-7.  When Scott Johnson proposed an amendment to his Complaint, he purposefully omitted the negligence claim.  Br. in Supp. of Mot. for Leave to Amend Compl. (Doc. 26) at 2.

[7]   Notice of Removal (Doc. 1) at 1-3.

Sheffield Financial financed the purchase.  Joshua Johnson and his father, Scott Johnson, cosigned the promissory note.[8]

In March or April of 2016, Joshua Johnson decided that he no longer wanted the Ranger and notified Sheffield Financial of the same.[9]  In early April 2016, Sheffield Financial located a third-party purchaser for the Ranger, accepted payment from the purchaser, and repeatedly instructed Joshua Johnson over the phone to "give him [the third-party] the keys."[10]  The purchaser "was thereafter placed in possession of the Ranger."[11]

Scott Johnson received a statement from Sheffield Financial dated April 19, 2016, showing that the note was paid off on April 16, 2016.  However, in late April or early May of 2016, Sheffield Financial told Scott Johnson over the phone that he still had outstanding debt because the third-party purchaser's payment was returned due to insufficient funds.  Scott Johnson denied that he owed anything to Sheffield Financial.[12]

Unbeknownst to Scott Johnson at the time, Sheffield Financial reported the loan to credit reporting agencies as delinquent.  Scott Johnson was not made aware of the credit reporting until late 2018 or early 2019, when he attempted to finance another purchase and the lender brought the matter to his attention.  After learning of the credit reporting, Scott Johnson filed a complaint with the Consumer Financial Protection Bureau ("CFBP").  On February 27, 2019, Sheffield Financial responded to the CFPB complaint, asserting that the loan was in default and that Scott Johnson had "failed to assure [that] the loan was paid in full before transferring the collateral."[13]

---

[8]   Compl. (Doc. 2) at 2.

[9]   *Id.*

[10]   *Id.*

[11]   *Id.*

[12]   *Id.*

[13]   *Id.* at 3.

Scott Johnson's Complaint requested the following relief: compensatory damages in an amount "exceeding that required for federal diversity jurisdiction," punitive damages, costs and attorneys' fees, and "pre- and post-judgment interest accruing at the highest legal rate."[14]

### B.  Sheffield Financial's Counterclaim and Third-Party Complaint

On October 15, 2019, a little more than a month after removal of this case to federal court, Sheffield Financial filed its Answer to Scott Johnson's Complaint and a Counterclaim for breach of contract.[15]  On May 21, 2020, Sheffield Financial filed a Third-Party Complaint against Joshua Johnson, which also alleges breach of contract.[16]  The substance of the Third-Party Complaint is nearly identical to the substance of the Counterclaim.

The Counterclaim and Third-Party Complaint allege the following: on or about July 3, 2015, Scott and Joshua Johnson obtained financing from Sheffield Financial for the purchase of a 2015 Polaris Ranger.  Pursuant to the financing contract, the Johnsons agreed to make seventy-two monthly payments to Sheffield Financial beginning on August 7, 2015 in the amount of $212.22 per month, for a total amount of $15,279.84.[17]

"On four separate occasions between March 2016 and May 2016, purported attempts were made through the Sheffield Express 24 interactive system to pay off the full outstanding amounts owed" by the Johnsons to Sheffield Financial under the contract.[18]  "On each occasion, the attempted payment was unsuccessful and returned."[19]  Sheffield Financial provided the Johnsons

---

[14]   *Id.* at 7.

[15]   Answer and Countercl. (Doc. 10).

[16]   Third-Party Compl. (Doc. 43).

[17]   Answer and Countercl. (Doc. 10) at 7; Third-Party Compl. (Doc. 43) at 2.

[18]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

[19]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

with notice of the returns.[20]  "The Loan history was updated to reflect the return of each payment, and the credit that had initially been applied for each unsuccessful payment was reversed."[21]

Sheffield Financial subsequently provided the Johnsons "with account statements reflecting the balance remaining on the account" and seeking payment from the Johnsons.[22]  To date, the Johnsons have "failed and refused to make payment to Sheffield."[23]  As of April 27, 2020, the total amount owed on the loan was $14,790.29, with interest continuing to accrue daily at the per diem rate of $2.42.[24]  "Pursuant to Section 7 of the Contract," the Johnsons agreed to pay to Sheffield Financial "all costs of collection, including but not limited to, reasonable attorneys' fees incurred by Sheffield."[25]

The Counterclaim and Third-Party Complaint allege that the Johnsons are in breach of the contract, and that Sheffield Financial has been damaged as a result of the breach.[26]  Sheffield Financial requests damages of no less than the total amount owed on the loan, plus interest, reasonable attorneys' fees, costs of collection, expenses, and all other amounts recoverable under the terms of the contract.[27]

---

[20]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

[21]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

[22]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

[23]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 2.

[24]   Third-Party Compl. (Doc. 43) at 2.  The Counterclaim, which was filed more than seven months before the Third-Party Complaint, states that "[a]s of October 10, 2019, the total amount owing on the Loan is $14,306.41, with interest continuing to accrue daily at the per diem rate of $2.42."  Answer and Countercl. (Doc. 10) at 8.

[25]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 3.

[26]   Answer and Countercl. (Doc. 10) at 8; Third-Party Compl. (Doc. 43) at 3.

[27]   Answer and Countercl. (Doc. 10) at 9; Third-Party Compl. (Doc. 43) at 3.  The Third-Party Complaint also requests "late fees" and "NSF fees."  Third-Party Compl. (Doc. 43) at 3.

### C. Sheffield Financial's Motion for Judgment on the Pleadings

On November 4, 2019, Sheffield Financial filed a Motion for Judgment on the Pleadings, arguing that: (1) the Complaint failed to allege an actual violation of the FCRA, and (2) the Arkansas common law claims pled in the Complaint were preempted by federal law.[28]  On June 30, 2020, the Court granted the Motion for Judgment on the Pleadings and dismissed all claims in Scott Johnson's Complaint.[29]  There was a lot on ink spilled over and time spent on the Motion for Judgment on the Pleadings.  Without getting into the substance of all the motions and orders relating to the Motion for Judgment on the Pleadings, the Court will briefly describe each filing in order to demonstrate how much time and effort was spent on the Motion.

Emails between the parties led to an Unopposed Motion for Extension of Time for Scott Johnson to file a Response,[30] which the Court granted.[31]  In his Response to the Motion for Judgment on the Pleadings, Scott Johnson conceded that the Motion had merit, and asked for leave to amend his Complaint.[32]  His Response also included a Counter Motion For Protective Order and To Stay Proceedings.[33]  At the Court's request,[34] Sheffield Financial submitted a Reply to Scott Johnson's Response to the Motion.[35]  The Court denied Scott Johnson's Counter Motion For Protective Order and To Stay Proceedings, and took the Motion for Judgment on the Pleadings

---

[28]   Mot. for J. on the Pleadings (Doc. 12) at 1-2.

[29]   Order (Doc. 47) at 10.

[30]   Mot. for Extension of Time (Doc. 14).

[31]   Order (Doc. 15).

[32]   Resp. in Opp'n to Mot. for J. on the Pleadings and Counter Mot. for Protective Order and to Stay Proceedings (Doc. 19) at 1-2.

[33]   *Id.* at 1-2.  Scott Johnson requested a protective order from further discovery and a stay of proceedings to provide an additional thirty days to respond to Sheffield Financial's discovery requests after an amended complaint was filed.  *Id.* at 2-3.

[34]   Order (Doc. 20).

[35]   Reply in Supp. of Mot. for J. on the Pleadings and Resp. in Opp'n to Counter Mot. for Protective Order and to Stay Proceedings (Doc. 21).

under advisement to give Scott Johnson time to file a Motion for Leave to File an Amended Complaint.[36]

Scott Johnson subsequently filed a Motion for Leave to File an Amended Complaint.[37] Sheffield Financial filed a Response opposing leave to amend.[38]  Scott Johnson filed a Reply to Sheffield Financial's Response opposing leave to amend.[39]  Scott Johnson filed a Motion for Leave to Supplement the Motion for Leave to Amend Complaint and Reply.[40]  Sheffield Financial filed a Response opposing the Motion for Leave to Supplement.[41]  The Court granted in part Scott Johnson's Motion for Leave to Supplement,[42] and so Scott Johnson filed the Supplement.[43]  In turn, Sheffield Financial filed a Motion for Leave to Supplement its Motion for Judgment on the Pleadings.[44]  Scott Johnson filed a Response opposing Sheffield Financial's Motion for Leave to Supplement.[45]  The Court granted Sheffield Financial's Motion for Leave to Supplement.[46]

Finally, the Court granted Sheffield Financial's Motion for Judgment on the Pleadings, and denied as futile Scott Johnson's Motion for Leave to File Amended Complaint and his Supplemental Motion for Leave to File Amended Complaint.[47]  In that Order, the Court explained that the Arkansas common law claims brought by Scott Johnson against Sheffield Financial were

---

[36]   Order (Doc. 22).

[37]   Mot. for Leave to File Am. Compl. (Doc. 25).

[38]   Resp. in Opp'n to Mot. for Leave to File Am. Compl. (Doc. 27).

[39]   Reply in Supp. of Mot. for Leave to File Am. Compl. (Doc. 30).

[40]   Mot. for Leave to File Suppl. to Mot. for Leave to File Am. Compl. (Doc. 34).

[41]   Resp. in Opp'n to Mot. for Leave to File Suppl. (Doc. 36).

[42]   Order (Doc. 41).

[43]   Suppl. Mot. for Leave to File Am. Compl. (Doc. 44).

[44]   Mot. for Leave to File Suppl. to Mot. for J. on the Pleadings (Doc. 37).

[45]   Resp. in Opp'n to Mot. for Leave to File Suppl. to Mot. for J. on the Pleadings (Doc. 39).

[46]   Order (Doc. 42).

[47]   Order (Doc. 47).

preempted[48] and that the Complaint, Amended Complaint, and Supplement to the Amended Complaint failed to state viable FCRA claims.[49]

### D.  Sheffield Financial's Motion for Summary Judgment

Discovery closed in this case on July 8, 2020.[50]  Discovery had been ongoing since December 10, 2019.[51]  Accordingly, the Court assumes that the discovery conducted in this case was related to both Scott Johnson's claims against Sheffield Financial and Sheffield Financial's claim against the Johnsons.  On July 23, 2020, Sheffield Financial moved for Summary Judgment on its state law breach of contract claim against the Johnsons.[52]  The Johnsons responded,[53] and Sheffield Financial replied.[54]  Sheffield Financial's Motion for Summary Judgment relied for factual support on the Declaration of John Nicholson (Senior Vice President of Sheffield Financial)[55] and the depositions of Scott Johnson[56] and Joshua Johnson.[57]

### E.  The Instant Motion to Dismiss.

With the dismissal of Scott Johnson's claims, the only remaining claim was (and is) Sheffield Financial's breach of contract claim against the Johnsons.  On August 5, 2020, the Johnsons filed the instant Motion to Dismiss.[58]  The Johnsons note that the Court "originally had

---

[48]  *Id.* at 2-6.

[49]  *Id.* at 6-10.

[50]  Final Scheduling Order (Doc. 17) at 1.  There was a small skirmish about discovery after the deadline expired.  Order (Doc. 59).

[51]  Joint Rule 26(f) Report (Doc. 16) at 1.

[52]  Mot. for Summ. J. (Doc. 48) at 1-2.

[53]  Resp. in Opp'n to Mot. for Summ. J. (Doc. 55).

[54]  Reply in Supp. of Mot. for Summ. J. (Doc. 58).

[55]  Attach. (Decl. of John Nicholson) to Mot. for Summ. J. (Doc. 48-3).

[56]  Attach. (Dep. of Scott Johnson) to Mot. for Summ. J. (Doc. 48-5).

[57]  Attach. (Dep. of Joshua Johnson) to Mot. for Summ. J. (Doc. 48-4).

[58]  Mot. to Dismiss (Doc. 49).

supplemental jurisdiction over Sheffield's collection action because the Court had original jurisdiction over Scott Johnson's claims under the Fair Credit Reporting Act."[59]  Now that Scott Johnson's federal (and state law) claims have been dismissed, "the only claims that remain pending are Sheffield's state law breach of contract claims."[60]  The Johnsons argue that "the Court should decline to exercise jurisdiction over the Counterclaim and Third-Party Complaint."[61]

In its Response, Sheffield Financial argues that the Court should exercise supplemental jurisdiction over the remaining claim because considerations of "'judicial economy, convenience, fairness, and comity' . . . weigh in favor of retaining jurisdiction in this case."[62]  Sheffield Financial also argues that "[t]here is no need for the Court to address the issue of supplemental jurisdiction" because "the Court has diversity jurisdiction over Sheffield's claims and may retain jurisdiction on that separate basis."[63]  On this point, Sheffield Financial says that "the amount in controversy requirement is met" because "as of July 23, 2020, the Johnsons owe a total amount of $15,000.90, plus attorneys' fees and costs of $62,703.12, for a total sum of $77,704.02."[64]

In Reply, the Johnsons argue that Sheffield Financial, "should it prevail, is only entitled to attorney's fees that are reasonable in relation to the underlying debt and that are attributable to its collection action."[65]  They argue that "costs and attorney's fees in the amount of $62,703.12 (!) on a debt of approximately $15,000.00" would be unreasonable.[66]  They also argue that, up to this point, "[t]he fight in this case has been about the FCRA claims," and that "the Court should decline

---

[59]   Br. in Supp. of Mot. to Dismiss (Doc. 50) at 2.

[60]   *Id.* at 1.

[61]   *Id.*

[62]   Resp. in Opp'n to Mot. to Dismiss (Doc. 52) at 6 (quoting *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016)).

[63]   *Id.* at 2.

[64]   *Id.* at 4.

[65]   Reply in Supp. of Mot. to Dismiss (Doc. 64) at 1.

[66]   *Id.*

to exercise supplemental jurisdiction over a simple collection action on which the Court has spent little time or effort."[67]

It is accurate to say that the primary focus of this case, at least initially, was the legal viability of Scott Johnson's claims against Sheffield Financial.  To be fair to Sheffield Financial, however, it must be admitted that some of the litigation efforts to date relate to its breach of contract claim.  This includes the preparation of the Counterclaim (and nearly identical Third-Party Claim) as well as the Summary Judgment filings.  This also includes at least some of the discovery conducted in this case.

## LEGAL STANDARDS

Let's start with diversity jurisdiction.  There are two important legal standards to discuss.  First, a "district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000."[68]  The party invoking federal jurisdiction must prove this—that a factfinder could legally conclude the damages are greater than $75,000—by a preponderance of the evidence.[69]  Said another way, the party invoking federal jurisdiction must prove by a preponderance of the evidence that "it does not appear to a legal certainty that the claim for relief is for" $75,000 or less.[70]

Second, the Eighth Circuit has held that "statutory attorney fees count toward the jurisdictional minimum calculation."[71]  Arkansas Code § 16-22-308 states that, "[i]n any civil

---

[67]   *Id.* at 3.

[68]   *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

[69]   *Id.* (emphasizing the importance of understanding precisely what must be proved by a preponderance of the evidence).

[70]   *Id.* (internal quotations and citation omitted).

[71]   *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005).

action to recover" for "breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs."  The Arkansas Supreme Court has held that the following factors are relevant in determining reasonable attorney's fees:

> (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.[72]

Now to supplemental jurisdiction.  28 U.S.C. § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."   "In exercising its discretion" concerning supplemental jurisdiction, "the district court should consider factors such as judicial economy, convenience, fairness, and comity."[73]  The Supreme Court has stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims."[74]  The

---

[72] *Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442, 10 S.W.3d 854, 856 (2000).  Both parties proceed under the assumption that Arkansas law applies to the determination of the fee awarded to a prevailing party in a contract case.  The Court was initially concerned that this might be wrong, considering that the contract calls for an application of North Carolina law to contractual disputes.  Ex. 1 (Contract) to Answer and Countercl. (Doc. 10-1) at 4.  However, controlling Eighth Circuit precedent does in fact require application of Arkansas law to the calculation-of-attorney-fees question under the circumstances present in our case.  *See Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005).  In any event, if North Carolina law applied, the maximum possible attorney fee here would be 15% of the outstanding balance owed on the contract.  N.C. GEN. STAT. ANN. § 6-21.2(1)-(2).  It suffices to say that the Arkansas standard is more friendly to Sheffield Financial.

[73] *Brown v. Mort. Elec. Registration Sys., Inc.*, 738 F.3d 926, 933 (8th Cir. 2013).

[74] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Eighth Circuit has held that "[a] district court has discretion to remand or dismiss . . . state law claims when the federal character of a case has been eliminated."[75]

## DISCUSSION

The Court concludes that it does not have diversity jurisdiction over Sheffield Financial's breach of contract claim. The $75,000.01 amount in controversy requirement has not been met. Sheffield Financial states that, as of April 27, 2020, the total amount owed on the loan was $14,790.29, with interest accruing daily at the per diem rate of $2.42.[76] This means that, as of January 22, 2021, the amount owed is $15,443.69. Let us posit (overgenerously to Sheffield Financial) that by the end of the case the amount owed could be $17,000. To surpass the amount in controversy threshold, the attorneys' fees would have to be more than $58,000. That's around three-and-a-half times the amount owed.

As alluded to above, Mr. Nicholson, a Senior Vice President for Sheffield Financial, provided a Declaration that stated that, as of July 23, 2020, "Sheffield has incurred $62,703.12 in attorney's fees and costs."[77] The amount in controversy includes attorneys' fees but excludes cost.[78] Mr. Nicholson does not breakdown the figure he provides between fees and costs. More importantly, he does not provide any way for the Court to determine how much of the total attorneys' fee is attributable to litigating Scott Johnson's claim as opposed to being attributable to litigating Sheffield Financial's breach of contract claim. That's a problem, as explained below.

---

[75]   *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 644 (8th Cir. 2008).

[76]   Third-Party Compl. (Doc. 43) at 2.

[77]   Attach. (Decl. of John Nicholson) to Mot. for Summ. J. (Doc. 48-3) at 3.

[78]   28 U.S.C. § 1332(a) (excluding costs from the amount in controversy for diversity purposes); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction.").

The majority of this case has concerned the resolution of questions of law presented by Scott Johnson's claims against Sheffield Financial.  It is more likely than not that the vast majority of the $62,703.12 in attorneys' fees and costs that Sheffield Financial's attorneys have billed to this point relate to litigation of legal questions about Scott Johnson's claims.  Said another way, it is more likely than not that the vast majority of the $62,703.12 in attorneys' fees and costs that Sheffield Financial's attorneys have billed to this point do not relate at all to litigating the breach of contract claim brought by Sheffield Financial.  For purposes of determining whether diversity jurisdiction exists over the state law breach of contract claim, the Court considers *only* the past and potential future attorneys' fees related to litigating the breach of contract claim.  As the Court reads the relevant precedents, where it is possible to logically divvy up the fees (and potential fees), it is appropriate to isolate the fees (and potential fees) related to the claim on which diversity jurisdiction is being urged.[79]

The Court believes it is not possible to divvy up and attribute to certain claims the time spent on discovery in this case.  On the other hand, it is possible to divvy up all the other attorney time spent litigating this matter.  Accordingly, given how this case has progressed, and even attributing all of the discovery-related fees to the breach of contract claim, it would be unreasonable to characterize any more than half of Sheffield Financial's attorneys' fees up to July 23, 2020 as related to Sheffield Financial's breach of contract claim.  And while the attorneys' fees from July 23, 2020 onward (through the end of this case) would be related to the breach of

---

[79]   *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983) (acknowledging that counsel should not be awarded attorneys' fees on discrete claims for which attorneys' fees are not authorized by statute); *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) (citing *Crawford v. F. Hoffman–LaRoche, Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001)) ("[O]nly statutory attorney fees count toward the jurisdictional minimum calculation."); *FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 649 (8th Cir. 2014) (holding that, under Arkansas law, "[w]hen breach-of-contract claims are advanced along with other claims, an award of attorney's fees to the prevailing party is proper only when the action is based primarily in contract") (cleaned up).

contract claim, much of the heavy lifting has been done already.  If this case were to go to trial, it would be a pretty simple, quick, and straightforward trial.

Considering all of the relevant factors for determining "reasonable" attorneys' fees,[80] the Court concludes that it would not be reasonable to award Sheffield Financial attorneys' fees of nearly four times the amount owed on the contract for what is a straight-forward breach of contract claim.  The legal and factual issues in this case are on the opposite side of the spectrum from novel, difficult, multifaceted, or particularly time-consuming.  Accordingly, at a minimum, factors 2, 3, 4, 7, and 8 of the 8-factor test set out by the Arkansas Supreme Court[81] strongly suggest that no reasonable court could award attorney fees of $58,000 in relation to the breach of contract claim.

Where it would take an unreasonable award of attorneys' fees to reach the jurisdictional minimum, both the Eighth Circuit and this District have found—to a legal certainty—that the amount in controversy was less than $75,000.[82]  This makes sense.  If plaintiffs were permitted to include excessive or speculative attorneys' fees in the amount in controversy for diversity purposes, it would render meaningless (or at least significantly neuter) the $75,000.01

---

[80]   *See supra* text accompanying note 72.

[81]   *Id.*

[82]   *Advance Am. Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008) ("A complaint will be dismissed for lack of subject matter jurisdiction if it appears to a legal certainty that the value of the claim is less than the required amount of $75,000."), *id.* at 1176 ("[T]here is nothing in the record supporting Advance America's speculation that attorney fees awarded by the arbitrator could possibly exceed $75,000 when the value of the disputed loan transactions was found by the district court to be below $1,000."); *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 927 (E.D. Ark. 2008) (quoting *In re Minnesota Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003)) ("'The complaint will be dismissed if it appears to a legal certainty that the value of the claim is actually less than the required amount.'"), *id.* at 928–29 ("While the experience of the attorney and the time required by representing the client are important, so are the amount in controversy and the result obtained in the case.  It seems unlikely that a court would award more than $33,000 on a claim of $41,000, and unless a court were to do so, the amount in controversy on Toller's individual claim would not reach $75,000.  Therefore, diversity jurisdiction does not exist based on Toller's individual claim."); *Sledge v. State Farm Mut. Auto. Ins. Co.*, No. 4:08CV00614 JLH, 2008 WL 3891510, at *1 (E.D. Ark. Aug. 18, 2008) (citing *In re Minn. Mut. Life*, 346 F.3d at 834) ("The complaint will be dismissed if it appears to a legal certainty that the value of the claim is actually less than the required amount."), *id.* at *2 ("It is wholly unreasonable to think that attorneys' fees and punitive damages can rise to $72,418.04 when the total compensatory damage claim is no more than $2,581.96.").

jurisdictional minimum.  Nearly every state law contract claim, no matter how small the actual contractual dispute, would become a federal case—because it is *possible* that attorney's fees *might* approach or exceed $75,000.

Let me be clear about the specific holding made here.  On this record, Sheffield Financial has not met its burden to show by a preponderance of the evidence that a reasonable fact-finder could award it $58,000 in attorneys' fees related to the breach of contract claim.  Maybe it could have made the required showing.  Maybe not.  In any event, it didn't.  Accordingly, Sheffield Financial has not met its burden to show by a preponderance of the evidence that a reasonable fact-finder could give a total award of more than $75,000, exclusive of costs, on the breach of contract claim.  So the amount in controversy is beneath the jurisdictional threshold and the Court does not have diversity jurisdiction over the breach of contract claim.

For purposes of completeness, the Court acknowledges that Sheffield Financial may be arguing that the $62,703.12 attorneys' fees figure (and any future attorneys' fees) should be included in its breach of contract claim because of the terms of its contract with the Johnsons.  The relevant portion of the contract states that:

> In the event that suit is instituted to collect any balance due hereunder, Debtor agrees to pay all costs of collection, including reasonable attorneys' fees to the extent allowed by law, plus any additional costs incurred (including attorneys' fees) in protecting or repossessing the Property Collateral.  Such attorneys' fees shall include any attorneys' fees awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.  Each Debtor also agrees to reimburse Sheffield for any costs incurred as a result of any breach of the foregoing, and that any costs not immediately so reimbursed may be added to the unpaid balance of the Principal and subjected to Interest accruing at the rate herein provided or such lesser rate as may be the highest rate allowed by law, or if no such maximum rate is specified, at 16% per annum. . . .  This Contract shall be governed by and construed in accordance with the laws of the United States and the State of North Carolina, for all matters related to interest and the exportation of interest.  For all other

matters, the Contract will be governed by the laws of the United States and the State of North Carolina to the extent permitted by applicable law.[83]

Whether North Carolina law or Arkansas law is applied to the interpretation of these contractual provisions, the outcome is the same.  The language of the contract is plain and unambiguous.  Under these circumstances, the Court's interpretation of the attorneys' fees provision begins and ends with the plain, unambiguous language.[84]  The attorneys' fees that the Johnsons agreed to pay are those that relate to Sheffield Financial's claims; the parties did not agree that the Johnsons would pay attorney fees that relate to other matters, like Sheffield Financial's defense against Scott Johnson's claims.

It is quite clear that attorneys' fees under the contract are limited to fees related to a suit "instituted to collect any balance due . . . ."[85]  The Johnsons "agree[d] to pay all costs of collection, including reasonable attorneys' fees to the extent allowed by law . . . ."[86]  The costs of *defending* an FCRA claim (and associated state common law claims) are not "costs of collection."  The costs of prosecuting the state law contract claim are, on the other hand, "costs of collection."  The Johnsons agreed "to reimburse Sheffield for any costs incurred as a result of any breach . . . ."[87]  In a philosophy class, I suppose it would pass the red-face test for a student to posit that Scott Johnson's FCRA (and associated state common law) claims were a second-order or knock-on

---

[83]   Ex. 1 (Contract) to Answer and Countercl. (Doc. 10-1) at 3-4.

[84]   *See, e.g., Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, 9, 598 S.W.3d 1, 7 (2020) (citing *C. & A. Constr. Co., Inc. v. Benning Constr. Co.*, 256 Ark. 621, 622, 509 S.W.2d 302, 303 (1974)) ("When the parties express their intention in a contract in clear and unambiguous language, we must construe the written agreement according to its plain meaning."); *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 272, 827 S.E.2d 458, 469 (2019) (citing *State v. Philip Morris USA, Inc.*, 193 N.C. App. 1, 12–13, 666 S.E.2d 783, 791 (2008)) ("[W]here the language of a contract is unambiguous, a court cannot ignore, insert, or improperly construe the meaning of any contract terms, but instead a court must infer the intent of the parties from the terms in the contract.").

[85]   Ex. 1 (Contract) to Answer and Countercl. (Doc. 10-1) at 3.

[86]   *Id.*

[87]   *Id.*

result of the alleged breach of contract by the Johnsons.  But that stretches the meaning of "a result of" beyond legal recognition.  It is certainly not the ordinary meaning of the phrase "a result of" as it is used in this contract.  The breach of contract action is a result of the alleged breach of contract.  Scott Johnson's claims are not.  In short, the contract does not alter the attorneys' fees analysis in any way that would push the amount in controversy on the breach of contract claim over $75,000.

The Court also declines to exercise supplemental jurisdiction over Sheffield Financial's breach of contract claim.  Declining to exercise supplemental jurisdiction in this case does not cause judicial economy concerns.  The Court's time and resources to this point have been primarily focused on the federal issues raised by Scott Johnson's claims.  Sheffield Financial says that it would be fairer and more convenient to keep the case in this Court because the trial date is approaching.[88]  That's a good argument, but ultimately not persuasive.  The trial date has already been postponed due to the COVID-19 crisis, and it is very possible that it will have to be postponed even further due to the continuing schedule disruptions caused by the pandemic.

It is true that the parties have submitted summary judgment briefing to this Court. However, this Court has yet to closely review and analyze the substantive merits of the summary judgment briefing.  Remanding the case to state court would not require additional summary judgment work by the parties.  Rather, the state court trial judge can simply review the previously submitted briefing.  There will be no wasted judicial resources and no wasted party resources.

It is fair to say that comity concerns are not particularly high here.  The contract dispute does not appear to involve novel or developing issues of state law.  Still, comity considerations in

---

[88]   Resp. in Opp'n to Mot. to Dismiss (Doc. 52) at 6.

our federalist system support sending even routine issues of state law back to a state court.[89] Declining to exercise supplemental jurisdiction over state law claims once all federal claims have been dismissed should be—generally speaking—the default stance of a federal court.  And there is no good reason that compels this Court to go the other way here.

The Johnsons ask for the Court to dismiss the remaining state law claim.  However, the Court "has discretion to [either] remand or dismiss . . .  state law claims when the federal character of a case has been eliminated."[90]  The Court will exercise its discretion by remanding Sheffield Financial's state law breach of contract claim(s) against the Johnsons to state court.

## CONCLUSION

For the foregoing reasons, the Johnsons' Motion to Dismiss is GRANTED in part.[91]  The Court remands the case to the Circuit Court of Lonoke County, Arkansas.  The Clerk of the Court is directed to immediately transfer this case to the Circuit Court of Lonoke County, Arkansas.  The Clerk is then directed to close this case.

IT IS SO ORDERED this 22nd day of January 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[89]  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

[90]  *Roeben*, 545 F.3d at 644.

[91]  Mot. to Dismiss (Doc. 49).  The Motion to Dismiss is granted to the extent that the Court agrees that it does not have diversity jurisdiction because the amount in controversy is not met, and that it should not exercise supplemental jurisdiction over the remaining state law claims.  The Court does not agree, however, that dismissal is proper.  Rather, the Court concludes that the proper action is to exercise its discretion to remand the state law claims to state court.  Accordingly, the request to dismiss is denied.